IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA MARIE WATSON | : | |
| | : | |
| Plaintiff | : | No. 4:07-CV-2048 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, | : : : | |
| | : | |
| Defendant. | : | |

**M E M O R A N D U M**

January 21, 2009

**BACKGROUND:**

On November 9, 2007, plaintiff, Anna Marie Watson, instituted this civil action against the Commonwealth of Pennsylvania, Department of Public Welfare ("DPW"), setting forth claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and under the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA"). On November 22, 2007, plaintiff filed an amended complaint. (Rec. Doc. No. 7). In her two-part amended complaint, plaintiff contends she was discriminated against, as the result of her gender, when her seniority was stripped from her, resulting in the loss of a permanent

1

employment position, and when defendant failed to promote her to a supervisory position for which she was qualified.

Defendant asserts that plaintiff fails to establish a prima facie case of gender discrimination, and that, even if she did, defendant has refuted the prima facie case with non-pretextual, legitimate, non-discriminatory explanations for its actions.

The parties have completed discovery.  On August 29, 2008, defendant filed its motion for summary judgment.  Opposing and reply briefs have been filed and the matter is ripe for disposition.  (Rec. Doc. No. 16).  For the following reasons, we will deny defendant's motion.

**DISCUSSION:**

### I. Standard of Review

It is appropriate for a court to grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those which might affect the outcome of the suit.  Id.; Justofin v.

Metropolitan Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004).

"If the nonmoving party has the burden of persuasion at trial, 'the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial.'" Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir. 1989) (quoting Chippolini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d. Cir. 1987)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In evaluating a motion for summary judgment the court will draw all reasonable inferences from the evidence in the record in favor of the nonmoving party. Am. Flint Glass Workers Union v. Beaumont Glass Co., 62 F.3d 574, 578 (3d Cir. 1995). The nonmoving party, however, cannot defeat a motion for summary judgment by merely offering general denials, vague allegations, or conclusory statements; rather the party must point to specific evidence in the record that demonstrates that there is a genuine issue as to a material fact. See Celotex, 477 U.S. at 321; Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## II. **Statement of Facts**

The plaintiff began working at the DPW's Trough Creek Youth Forestry Camp #3 ("YFC #3") as a limited term wage (or temporary) Youth Development Aide ("YDA"), responsible for supervising the camp's residents, on October 18, 2004. Two males, Chad Ramper and Matthew Mellott, were also hired as temporary YDAs at the same time.

The temporary YDA positions, mirroring the permanent YDA positions, were union positions covered by a contract negotiated by the American Federation of State, County and Municipal Employees. Under this contract, union employees who had the same start dates were required to establish seniority via some reasonable method. In this instance, Watson, Ramper and Mellott drew straws on November 2, 2008. The lottery resulted in plaintiff's acquiring seniority over Mellott and Ramper.

On January 15, 2005, Neil May, a permanent YDA at DPW's North Central Secure Treatment Unit who had also been hired on October 18, 2004, transferred into a temporary YDA position at YFC #3. In May 2005, plaintiff and her colleagues applied for an open permanent YDA position at Camp #3. On June 22, 2005, as a result of May's arrival, another seniority lottery was conducted. The results of this second seniority drawing were as follows: 1) Mellott; 2) May; 3)

Ramper; and 4) Watson. Mellott was subsequently awarded the permanent position. Later, plaintiff was awarded a similar position on September 23, 2006.

In September 2007, plaintiff applied for a permanent nighttime YDA Supervisor position at YFC #3. Prior to conducting interviews for the permanent supervisor position, DPW permitted May to temporarily work "out of class" in a supervisory position. After interviewing five candidates, including Watson and May, the interviewers ranked May the best candidate and Watson the worst candidate. As a result, May was offered and he accepted the supervisory position on October 20, 2007.

### III. Gender Discrimination Claim

Plaintiff alleges she was discriminated against, as the result of her gender, in violation of Title VII and PHRA.[1] Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an employee with respect to compensation, terms and conditions of employment, or benefits because of an

---

[1] Discrimination under the PHRA is analyzed in the same manner as discrimination under Title VII. E.g., Conley v. City of Erie, 521 F.Supp.2d 448, 452 (W.D. Pa. 2007). Therefore, our analysis of plaintiff's gender discrimination claim under Title VII will apply with equal force to the claim plaintiff asserts under the PHRA.

individual's sex.  42 U.S.C. § 2000e-2(a).  In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the Supreme Court established a burden-shifting framework for Title VII pretext actions.   First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence.  <u>Id.</u> at 802.   In order to establish a prima facie claim for Title VII employment discrimination the plaintiff must demonstrate (1) that she is a member of a protected class; (2) that, if applicable, she was qualified for the position to which she applied; (3) that she was subject to an adverse employment action; and, (4) that similarly situated members of non-protected classes were treated more favorably.  <u>E.g.</u>, <u>Frey v. Pennsylvania Airlines</u>, 859 F.Supp. 137, 142 (M.D. Pa. 1992).  Once plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to dispel this presumption of discrimination by articulating a legitimate, non-discriminatory reason for the defendant's treatment of the plaintiff.  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981); <u>Williams v. Giant Eagle Markets, Inc.</u>, 883 F.2d 1184, 1192 (3d Cir. 1989).  If the defendant satisfies this prong, the presumption created by the plaintiff's prima facie showing is eliminated.  <u>Burdine</u> at 254-55.   The plaintiff must then show, by a preponderance of the evidence, that the alleged non-discriminatory reasons proffered by the defendant are pretextual, and that the defendant intentionally discriminated against the plaintiff.  <u>Fuentes v.

Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Defendant contends that plaintiff has not established the initial prima facie case of discrimination because the plaintiff did not suffer an adverse employment action. Plaintiff responds by contending that she suffered an adverse action when she was denied a permanent position in June 2005 and when she was denied a supervisory position in October 2007.

Defendant is correct in noting that the DPW's failure to offer plaintiff a permanent position in June 2005 did not result in an adverse employment action. Although a failure to promote is normally considered an adverse employment action, Sherrod v. Philadelphia Gas Works, 57 Fed. Appx. 68, 73 (3d Cir. 2003) (An adverse employment action necessarily encompasses . . . "hiring, firing, failing to promote, reassignment or a decision causing a significant change in benefits.") (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)), this is not the case here because a change in plaintiff's status from temporary to permanent, which she eventually received in September 2006, would not have altered her pay, benefits, duties or terms of employment. The plaintiff's claim that she suffered an adverse action because she was deprived of the job security which accompanies a permanent position is without merit. An employee who remains employed does not face a materially adverse employment action simply because she was denied a

7

status change which would have made it more difficult for her employer to terminate her employment. If, following an employer's failure to promote, the employee is not denied increased pay or benefits, or does not suffer from a material alteration in the terms or duties of her employment or face actual or constructive termination, no adverse employment action occurred. See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999) ("If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found.").

Regarding plaintiff's claim that a second adverse action occurred when plaintiff was denied the supervisory position, defendant asserts that this claim is forestalled because it was not in the original PHRC complaint. We disagree.

Generally, a plaintiff must state the allegations that she is raising against her employer in the EEOC/PHRC complaint. See Hornsby v. U.S. Postal Serv., 787 F.2d 87, 90 (3d Cir. 1986). However, that is not the case where, as here, the omitted act about which the plaintiff complained is the same type that is contained within the original complaint. See Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) (holding that an allegation alleged in a Title VII action need not be specifically included in the original EEOC complaint if it is fairly within the scope of the prior EEOC complaint). Thus, plaintiff alleged a materially adverse

employment action because she claims that she was denied a promotion to a supervisory position, resulting in a deprivation of additional income and benefits. Sherrod, 57 Fed. Appx. at 73.

Defendant did not argue that plaintiff did not meet the other three elements of the prima facie case test.  A review of the record indicates that plaintiff satisfied these remaining requirements, see Frey, 859 F. Supp. at 142, thereby fulfilling the first prong of the McDonnell Douglas test and shifting the burden to defendant to demonstrate a legitimate, non-discriminatory reason for the defendant's treatment of the plaintiff.

DPW maintains that Watson was not promoted to the nighttime YDA supervisory position because an interview panel concluded that Neil May was the most qualified candidate for the position.  It is clear from the record that DPW employed a thorough interview process and that the interviewers, which included a woman, consistently scored May's interview higher than Watson's.  This is a legitimate, non-discriminatory reason for offering the position to May and not Watson.

Plaintiff disputes this explanation, arguing that the true reason she was denied the promotion was because of her gender.  In support of this proposition, plaintiff alleges that Treasure Gallagher, the woman on the interview panel, favors

9

men over women and that Jamie Rosser and Michael Villa, the other two interviewers, were members of a "boys club," which systematically ostracized the women working at YFC #3.

In support of her allegations against Gallagher, who was charged with training YFC #3 staff, plaintiff claimed that Gallagher had a friendly relationship with Neil May's brother, (Rec. Doc. No. 21-3, pp. 12-13), and that she consistently treated women more harshly than men and demanded a higher level of performance from female staff members during training exercises.  (Id. at pp. 13, 44-45).

Regarding the "boys club,"  plaintiff postulates, inter alia, that: (1) she was never invited to social activities scheduled by male employees, (id. at pp. 44-45); (2) her assignments were largely limited to supervising cleaning performed by residents while male YDA's supervised a broader spectrum of activities, (id. at pp. 4-6); (3) male employees, including May, were permitted to sleep at work without fear of reprisal, (id. at pp. 15-25); (4) camp manager David Fouse refused to interact with her and treated female employees with disrespect, (id. at 26; Rec. Doc. No. 21-10, ¶ 4); (5) management and staff permitted a resident to abuse her for several months, (Rec. Doc. No. 21-3, p. 36-39); and, (6) her supervisor, Mike Beck, reviewed the supervisor's manual with May the evening prior to the

interview, (id. at pp. 13-14).    Plaintiff also asserts that Rosser and Villa were not only members of the "boys club," but their individual actions indicate a discriminatory stance towards women.  Specifically, Watson claims that Rosser neglected to take any action to prevent a resident under his supervision from choking her even when he threatened her in Rosser's presence.  (Id. at pp. 37-38). Concerning Villa, plaintiff notes that he told Joseph Holzer, another YFC #3 employee, that both May and the plaintiff interviewed poorly, (Rec. Doc. No. 21-11, ¶ 3), yet May still scored fifteen points higher than Watson.  (Rec. Doc. No. 18, ¶ 40-41; Rec. Doc. No. 18-10, pp. 10-11, 24-25).

"[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764.  After a careful examination of the evidence Watson submitted in support of her opposition to defendant's motion for summary judgment, we conclude that it is sufficient to allow a reasonable jury to find that DPW's reasons for offering the position to May were pretextual.

There were no established objective standards or guidelines for scoring the interviews.  Consequently, if the interviewers' decisions were unexplained, which

11

they would be if the jury disbelieves the testimony presented by the defendant, the jury could infer, based upon the other direct and indirect evidence, an illegal discriminatory criterion for the decision.  Therefore, in providing all favorable inferences to the non-moving party, we conclude that the jury could reasonably disbelieve the defendant's proffered legitimate reason for failing to promote plaintiff, believe the plaintiff and find intentional discrimination.

**CONCLUSION:**

For the reasons stated above, we find that defendant is not entitled to summary judgment as a matter of law.  Therefore, we will deny defendant's motion for summary judgment.

<div style="text-align:right">

  s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA MARIE WATSON | : | |
| | : | |
| Plaintiff | : | No. 4:07-CV-2048 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, | : | |
| Defendant. | : | |

# O R D E R

January 21, 2009

In accordance with the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

Defendant's "Motion for Summary Judgment" is DENIED. (Rec. Doc. No. 16).

     s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

