IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANNA MARIE WATSON | : | |
| | : | |
| Plaintiff | : | No. 4:07-CV-2048 |
| | : | |
| v. | : | (Judge McClure) |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE, | : | |
| | : | |
| Defendant. | : | |

**O R D E R**

April 9, 2009

**BACKGROUND:**

On November 9, 2007, plaintiff, Anna Marie Watson, instituted this civil action against the Commonwealth of Pennsylvania, Department of Public Welfare ("DPW"), setting forth claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and under the Pennsylvania Human Relations Act, 43 P.S. §§ 951, et seq. ("PHRA"). On November 22, 2007, plaintiff filed an amended complaint. (Rec. Doc. No. 7). In her two-part amended complaint, plaintiff contends she was discriminated against, as the result of her gender, when her seniority was stripped from her, resulting in the loss of a permanent

employment position, and when defendant failed to promote her to a supervisory position for which she was qualified.

The parties have completed discovery. On August 29, 2008, defendant filed its motion for summary judgment. (Rec. Doc. No. 16). We issued a memorandum and order denying defendant's motion on January 21, 2009. (Rec. Doc. No. 25). On February 4, 2009, defendant filed a motion for reconsideration. (Rec. Doc. No. 27). A supporting brief was filed on February 19, 2009. (Rec. Doc. No. 31). Plaintiff filed an opposition brief on March 6, 2009. (Rec. Doc. No. 36). Defendant has not filed a reply brief and the deadline for doing so has expired. This motion is now ripe for disposition. For the following reasons, we will deny defendant's motion.

**STATEMENT OF FACTS:**

The plaintiff began working at the DPW's Trough Creek Youth Forestry Camp #3 ("YFC #3") as a limited term wage (or temporary) Youth Development Aide ("YDA"), responsible for supervising the camp's residents, on October 18, 2004. Two males, Chad Ramper and Matthew Mellott, were also hired as temporary YDAs at the same time.

The temporary YDA positions, mirroring the permanent YDA positions,

were union positions covered by a contract negotiated by the American Federation of State, County and Municipal Employees. Under this contract, union employees who had the same start dates were required to establish seniority via some reasonable method. In this instance, Watson, Ramper and Mellott drew straws on November 2, 2008. The lottery resulted in plaintiff's acquiring seniority over Mellott and Ramper.

On January 15, 2005, Neil May, a permanent YDA at DPW's North Central Secure Treatment Unit who had also been hired on October 18, 2004, transferred into a temporary YDA position at YFC #3. In May 2005, plaintiff and her colleagues applied for an open permanent YDA position at Camp #3. On June 22, 2005, as a result of May's arrival, another seniority lottery was conducted. The results of this second seniority drawing were as follows: 1) Mellott; 2) May; 3) Ramper; and 4) Watson. Mellott was subsequently awarded the permanent position. Later, plaintiff was awarded a similar position on September 23, 2006.

In September 2007, plaintiff applied for a permanent nighttime YDA supervisor position at YFC #3. Prior to conducting interviews for the permanent supervisor position, DPW permitted May to work temporarily "out of class" in a supervisory position. After interviewing five candidates, including Watson and May, the interviewers ranked May the best candidate and Watson the worst

candidate. As a result, May was offered and he accepted the supervisory position on October 20, 2007.

**DISCUSSION:**

Because of the "strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). A motion for reconsideration is a device of limited utility; it may be used only to seek remediation of manifest errors of law or fact or to present newly discovered precedent or evidence which, if discovered previously, might have affected the court's decision. See Iseley v. Talaber, No. CV-05-0444, 2007 WL 2065997, at *2 (M.D. Pa. July 16, 2007) (Kane, C.J.). Here, the defendant submits that our decision to deny its motion for summary judgment "reflects an error of law and, therefore, Defendant's request for reconsideration is appropriate." (Rec. Doc. No. 31, p. 5). While we agree that defendant's request is proper, defendant is not entitled to reconsideration.

Defendant first contends that we erred in concluding that plaintiff adequately demonstrated that defendant's reasons for offering the position to May were pretextual. In support, defendant notes that we made a determination of fact when

describing the interview process as "thorough" and stating that the defendant's proffered explanation for selecting May was a "legitimate, nondiscriminatory" reason. (Rec. Doc. No. 25, p. 9). Defendant incorrectly interprets the determination made by the court; Watson correctly recognized that we merely determined that defendant had met its burden of production under the applicable test, thereby shifting the burden back to the plaintiff. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).

Defendant also claims that the record shows that the interview process was objective. We disagree. Not only did Rosser essentially acknowledge that the evaluation process was entirely subjective, see (Rec. Doc. No. 35-2, pp. 14-17, 21-22), but the evaluation sheets, which include numerical ratings of one through twenty and one through fifteen, were devoid of objective criteria for scoring the interviewees' answers. See (Rec. Doc. No. 21, Ex. P & Q). Numerical ranking systems of this nature are "highly subjective" and are "'more susceptible of abuse and more likely to mask pretext.'" Goosby v. Johnson & Johnson Medical Inc., 228 F.3d 313, 320 (3d Cir. 2000) (quoting Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990)).

Additionally, defendant claims that, although we addressed pretext, we did not adhere to Third Circuit precedent. Again, we disagree. Under the Fuentes v.

Perskie test, once the defendant proffers a legitimate non-discriminatory reason for its action, the plaintiff may survive summary judgment if she provides "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." 32 F.3d 759, 764 (3d Cir. 1994). Prong one of the Fuentes test essentially asks whether the adverse action suffered by the plaintiff resulted from discrimination; not whether the employer made a sound business decision. Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997). Unless there is evidence of discrimination, we may not delve into the employer's subjective business decisions or set our own standards for the employer. Ezold v. Wolf, Block, Schorr, & Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992).

In order to establish that one could reasonably disbelieve the employer's articulated legitimate, non-discriminatory reason, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'"

Fuentes, 32 F.3d at 765 (citations omitted) (alteration in original). To discredit the employer's articulated legitimate reasons, the plaintiff “need not ‘produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, nor produce additional evidence beyond [her] prima facie case.’” Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764-65).

We originally determined that plaintiff proffered enough evidence to permit a jury to reasonably disbelieve defendant’s articulated legitimate reason, thereby giving rise to the inference that plaintiff was intentionally discriminated against. (Rec. Doc. No. 25, pp. 11-12). We see no reason to alter our original assessment.

Defendant, however, essentially argues that there is not enough evidence for a reasonable factfinder to conclude that defendant’s reasons for promoting May were pretextual. According to DPW, none of the evidence proffered by plaintiff is based on her sex, and instead could be attributed to personality differences. Although we agree that it is possible to attribute Watson’s problems to personality differences, a factfinder could also reasonably conclude that she was discriminated against as a result of her gender.

While defendant asserts that the “boys club” and its actions are not indicative of gender discrimination within the interview process, defendant

conveniently ignores the fact that Watson will testify that both Rosser and Villa, two-thirds of the interview panel, actively participated in the "boys club," and that management personnel cultivated a discriminatory atmosphere.  One cannot reasonably dispute that circumstantial evidence of gender-based discrimination exists here, where male interviewers, as part of a larger male collective, ostracized and denigrated a female interviewee on a regular basis, subsequently passing over that interviewee in favor of a male colleague of similar professional pedigree.  Nor could one legitimately argue that Fouse's unfavorable treatment of women had no impact upon the camp's dynamic, including the interview process.   That plaintiff did not couch this evidence within a hostile work environment claim is immaterial for our purposes here; Watson may prove disparate treatment and intent within the interview process via evidence of a discriminatory pattern.

Furthermore, defendant's claim that "most of what the Court relies upon as evidence of pretext is from nondecisionmakers" is plainly incorrect.  The great majority of the plaintiff's supporting evidence relates to the interviewers, Rosser, Villa and Gallagher, her supervisor and the camp manager.  See (Rec. Doc. No. 25, pp. 9-11).

For the aforementioned reasons, we conclude that we have not made an error regarding law or fact and once again hold that a reasonable factfinder could find


defendant's articulated non-discriminatory reasons pretextual under the first prong of Fuentes. Consequently, we need not entertain the second, distinct prong of the Fuentes test. See Snooks v. Duquesne Light Co., No. 08-1689, 2009 WL 449154, at *5 (3d Cir. Feb. 24, 2009) (citing Fuentes, 32 F.3d at 764-65).

For the foregoing reasons, we will deny defendant's motion.

**NOW, THEREFORE, IT IS ORDERED THAT:**

Defendant's motion for reconsideration is DENIED. (Rec. Doc. No. 27). (Id.).

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge